THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. JOHN THREEWITT, Plaintiff in Error.

*Opinion filed October 25, 1911.*

1. CRIMINAL LAW—*perjury indictment need not show wherein the false testimony was material.* An indictment for perjury need not show wherein the false testimony was material if the false testimony is set out and is alleged to have been material to the issue on the trial of the cause.

2. SAME—*the jury are not to determine whether false testimony was as to a material issue.* It is error for an instruction in a perjury case to authorize the jury to determine whether the alleged false testimony was as to a material issue in the case; but the error cannot be complained of by defendant if it also appears in the instructions given at his request.

3. SAME—*what is not ground for a new trial.* That the court, during a perjury trial and in the presence of the jury, said to the jury in a murder case which had just returned a verdict of not guilty, "Gentlemen, I must say that you put a very low estimate upon human life to return such a verdict as this," is not ground for a new trial in the perjury case; nor is a remark by the court, during the argument by defendant's counsel, to the effect that the presumption of innocence only obtains until overcome by proof.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. WILLIAM H. GREEN, Judge, presiding.

D. F. MOORE, and MOONEYHAM & SEEBER, for plaintiff in error.

W. H. STEAD, Attorney General, GEORGE A. HICKMAN, State's Attorney, and JOEL C. FITCH, (W. H. WILLIAMS, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error was tried and convicted in the circuit court of Franklin county of the crime of perjury and sentenced to an indeterminate term in the penitentiary. He brings the record to this court for review by writ of error.

The first count of the indictment charges plaintiff in error with unlawfully, willfully, feloniously, falsely and corruptly committing perjury in a cause wherein the city of Benton, Franklin county, Illinois, was plaintiff and plaintiff in error was defendant; that the cause was tried before C. B. Teague, a justice of the peace of said Franklin county, and on the trial thereof plaintiff in error testified as a witness in his own behalf; that he was duly sworn by the said justice of the peace to tell the truth; that it became a material question on said trial whether plaintiff in error had kept or suffered to be kept any table, cards, dice or other apparatus or things to be used in and for the purpose of gaming in a building in said city of Benton known as the Simpson Brick Building, within eighteen months prior to the time of the commencement of said action; that plaintiff in error on said trial swore he never put any table or tables, cards, dice or other apparatus or things to be used for the purpose of gaming in the Simpson Brick Building, in said city of Benton; that he had the only key to the rooms then occupied by him, and that he never authorized anyone to put any table or tables, cards, dice or other apparatus or things to be used for the purpose of gaming, in said building or in the rooms occupied by him and did not have said rooms fitted up as gambling rooms. The indictment then alleges in apt language that plaintiff in error knew his testimony was untrue and that he had put a table, chairs and other apparatus in said rooms for the purpose of gaming, whereby he was guilty of willful and corrupt perjury. The second count alleges that it became a material question on said trial whether plaintiff in error had rooms in the Simpson Brick Building, in the city of Benton, fitted up with gaming apparatus and implements, to-wit, tables, cards and dice, and permitted persons to come together in said rooms for the purpose of playing games for money and used and occupied the same for gaming purposes. The false testi-

mony charged in the second count is substantially identical with that charged in the first count.

The first error discussed in the brief of plaintiff in error is that the court erred in overruling his motion to quash the indictment; that it did not state the offense for which plaintiff in error was being tried before the justice of the peace, and that it is not made to appear from the averments in the indictment that the testimony of plaintiff in error was material on the trial of said cause. These objections are not well taken. The indictment stated that the testimony of plaintiff in error alleged to be false was material to the issue on the trial of said cause, and it was not necessary that the allegations of the indictment should show wherein said testimony became material. In *Kizer* v. *People,* 211 Ill. 407, the court said: "The authorities are agreed that there are two methods of averring the materiality of the testimony upon which the perjury is assigned, in common use and recognized in practically all the courts of this country and of England, and are, first, that without setting out all the facts from which the court may see the materiality of the evidence, the particular matter or testimony is set out with the averment of the pleader that it was material; or, second, the pleader may so state the issues and the matters sworn to in which it is alleged the perjury is committed, that the court, from the averment of the facts testified about and the nature of the cause in which the testimony was given, can see that the testimony was material." The same doctrine is announced in *Greene* v. *People,* 182 Ill. 278; *Kimmel* v. *People,* 92 id. 457; *Pollard* v. *People,* 69 id. 148.

It is also urged that the evidence is not sufficient to sustain the conviction. The undisputed evidence shows that plaintiff in error and others were arrested at the rooms in the Simpson Brick Building by a constable and policeman who went there with a search warrant about December 15, 1909. There were a round table three and a half feet or

four feet in diameter, the top of which was covered with cloth of some kind fastened to the edges of the top, some chairs, playing cards and poker chips in the room. Six men besides plaintiff in error were found in the room by the officers at the time they entered it with the search warrant. A complaint was filed against plaintiff in error, in the name of the city of Benton, for keeping a gaming room, and it was on the trial of this case he testified to the statements alleged in the indictment. That he testified substantially as alleged in the indictment we think was abundantly proven and the proof in this respect was not contradicted. The proof further showed that the plaintiff in error shipped the table and some chairs from a town by the name of Hanaford to Benton about the last of November or first of December; that the property was delivered by the agent of the railroad company at Benton to plaintiff in error, who hired a teamster to haul it to the Simpson building. The teamster testified he delivered it to plaintiff in error and four or five others at said building and that they took it up the stairway. After it was seized by the officers he testified he hauled the same articles away from the building that he had hauled there for plaintiff in error. The evidence was sufficient, if believed, to justify the verdict, and no reason appears in the record why it should not have been believed.

No prejudicial error was committed by the court in admitting and refusing testimony.

The second instruction given on behalf of the People, in enumerating the elements necessary to be proven by the evidence beyond a reasonable doubt to warrant a conviction, submitted to the jury to determine whether the alleged false testimony was as to a material question in issue. This was erroneous. (*Wilkinson* v. *People,* 226 Ill. 135.) But as plaintiff in error in four instructions given on his motion submitted the same question to the jury he is in no position to complain of the error in People's instruction No. 2.

(*Consolidated Coal Co. v. Haenni,* 146 Ill. 614; *Hacker* v. *Munroe & Son,* 176 id. 384; *Illinois Central Railroad Co.* v. *Beebe,* 174 id. 13.) We find no reversible error in giving and refusing instructions.

With his motion for a new trial plaintiff in error filed an affidavit, in which he stated that during the trial of this case a jury in a murder case that had been tried in the same court agreed upon a verdict, was brought into court and the verdict of not guilty was read and published in the presence of the jury in this case, whereupon the court said: "Gentlemen, I must say that you put a very low estimate on human life to return such a verdict as this." It was also stated in said affidavit that while counsel for plaintiff in error was making the closing argument in his behalf to the jury he stated: "The law is that every defendant is presumed to be innocent until he is proven guilty beyond all reasonable doubt, and that such presumption should remain with the jury until they have heard all the evidence in the case, and the instructions read by the court, and the argument of counsel, and then such presumption shall remain with you in the jury room until a verdict to the contrary is signed by you." Thereupon the court interrupted and said: "Mr. Moore, that is not the law. The presumption of innocence only obtains until it is overcome by proof." No objection was made by plaintiff in error or exception taken to the reading of the verdict of the jury in the murder case in the presence of the jury in this case, or to the remarks of the court to the jury in that case, or to the statement of the court to counsel in the argument to the jury in this case. But if objections had been made and exceptions preserved, we are of opinion the action of the court complained of would not justify a reversal of this case.

There being no reversible error in the record the judgment is affirmed.                    *Judgment affirmed.*