THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD PHIPPS, Plaintiff in Error.

*Opinion filed April. 22, 1915—Rehearing denied June 11, 1915..*

1. CRIMINAL LAW—*what necessary to qualify a lay witness to testify as to soundness of mind of defendant.* In order to qualify a non-expert witness to testify in a criminal case as to the soundness of mind of the defendant he must first detail the peculiarities he has observed and the facts and circumstances on which he bases his opinion, and his mere opinion, without a statement of facts and circumstances on which it is based, can be given no weight.

2. SAME—*when conversations with defendant are not admissible.* Conversations between the defendant and certain witnesses relative to the alleged misconduct of the defendant's wife with the man whom he is charged with assaulting with intent to murder are not admissible as tending to show the defendant's mental condition, where it is not shown that his mind had ever been diseased or that the receipt by him of the information as to his wife's alleged infidelity itself produced actual insanity.

3. SAME—*what question by the State's attorney is proper cross-examination.* Where a non-expert witness is asked, on direct examination, to describe the conduct of the defendant on the last two times he saw him prior to the day of the shooting, and he answers that the defendant was very nervous and did not appear to know what he was doing, it is proper to allow the State's attorney, on cross-examination, to ask the witness whether defendant seemed to know what he was talking about.

4. SAME—*when instructions as to self-defense are not erroneous as ignoring defense of insanity.* Instructions upon the subject of self-defense are not erroneous as ignoring the defense of insanity where they do not purport to sum up the elements necessary to warrant a verdict of guilty nor to direct a verdict and where the defense of insanity is treated in other instructions.

5. SAME—*words constitute no justification for assault with intent to murder.* On the trial of one charged with assault with intent to murder a man who he had been told had been guilty of adultery with the defendant's wife, instructions are proper which inform the jury that it is immaterial what conversations had previously taken place between the defendant and such man or what the latter's conduct had been with reference to the defendant's wife, provided the defendant did not act in self-defense in the shooting and had mental ability to distinguish between right and wrong.

6. SAME—*what is not improper conduct by the court.* If the defendant, while on the witness stand, persists in volunteering remarks as to his defense and what he could prove if the court would permit him to do so, after having been cautioned by the court, it is not error for the court to reprimand him in the presence of the jury and threaten to punish him for contempt.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. W. K. WHITFIELD, Judge, presiding.

EVANS & HAMILTON, for plaintiff in error.

P. J. LUCEY, Attorney General, JESSE L. DECK, State's Attorney, and ARTHUR R. ROY, (C. F. EVANS, of counsel,) for the People.

Mr. JUSTICE COOKE delivered the opinion of the court:

Plaintiff in error, Edward Phipps, was convicted in the circuit court of Macon county of the crime of assault with intent to commit murder and was sentenced pursuant to the statute to the penitentiary at Chester. The grounds relied upon for reversal of the judgment of the circuit court are, that the trial court erred in the admission and exclusion of evidence, in the giving and refusing of instructions, and in making prejudicial remarks in the presence of the jury.

Plaintiff in error and the complaining witness, Richard V. Roderick, resided in the same flat-building in the city of Decatur. It appears that the plaintiff in error suspected Roderick of having illicit relations with his wife.

On March 19, 1914, as Roderick was passing down the hallway of the floor on which both he and plaintiff in error resided, plaintiff in error stepped out from his apartments and shot Roderick, wounding him seriously. The assault was not denied by plaintiff in error upon the trial. Two defenses were interposed: that of self-defense and temporary insanity.

It is complained that the court improperly excluded competent testimony on the question of the mental condition of the plaintiff in error prior to and at the time the assault was committed. No expert testimony was offered on this question, the only witnesses called being laymen or non-expert witnesses. It is proper to show the soundness or unsoundness of mind by a non-expert witness, but in order to qualify such a witness to testify that the person concerning whom the inquiry is being made is of unsound mind, he must first detail the peculiarities which he has observed and the facts and circumstances upon which he bases his opinion. Where the purpose is to prove unsoundness of mind, an objection is properly sustained to a question which calls for the opinion of the witness as to the mental condition without first eliciting the facts and circumstances upon which such opinion is based. The opinion of a non-expert witness that the person who is the subject of the inquiry is of unsound mind is entitled to no weight where he states no facts or circumstances which would induce a reasonable belief that such person is of unsound mind. After the witness has detailed all the facts upon which he bases his opinion he may then give that opinion to the jury, to be received by them and given such value as the facts detailed and the apparent intelligence of the witness and his capacity to form an opinion may warrant. (*Brainard* v. *Brainard*, 259 Ill. 613; *Coleman* v. *Marshall*, 263 id. 330.) In no instance did the court refuse to permit any witness on behalf of plaintiff in error to testify concerning any peculiarities of the plaintiff in

error prior to or about the time of the shooting, or to describe his conduct and actions during the same time, or to detail any change that had been observed in his conduct. Objections were sustained to questions propounded in chief to witnesses called on behalf of plaintiff in error which called for the ultimate conclusions of the witnesses as drawn from what they had seen and observed. Without detailing the bases of their opinions in this respect the conclusions arrived at by the witnesses would be of no value whatever to the jury and were properly excluded. In no instance, however, was any witness on behalf of plaintiff in error asked, in his examination in chief, whether he believed plaintiff in error to be sane or insane. The opinions asked for by the questions above mentioned fell short of that. This is probably accounted for by the fact that no witness called on behalf of plaintiff in error qualified to give such an opinion. Two of the plaintiff in error's witnesses, on cross-examination, however, were asked if in their judgment plaintiff in error, at the time of the shooting, knew the difference between right and wrong, and each replied that in his opinion he did not. This is the only opinion evidence given on the trial on the question of the mental condition of plaintiff in error.

The proposition most strenuously argued on behalf of plaintiff in error is, that the court excluded from the jury certain conversations had by plaintiff in error with various persons as to the misconduct of Roderick and Mrs. Phipps, and it is insisted that this was error because it is claimed that it has a bearing upon the mental condition of plaintiff in error at the time the assault was made. It was sought to be shown that about March 4, 1914, and on various days between that time and the date of the shooting, information had been conveyed to the plaintiff in error that his wife had been guilty of adultery with Roderick. It is not claimed that the receipt of such information by plaintiff in error justified him in making a murderous assault upon

Roderick, or that the fact that his wife had been guilty of adultery with Roderick, if such be the fact, would be a justification for such an assault. Neither is it claimed that this evidence should have been admitted in order to show that if death had resulted from the assault the crime committed would have been manslaughter instead of murder, thus showing the lack of the necessary intent to constitute the crime of assault with intent to commit murder. The only contention in this respect is that this evidence should have been admitted as bearing upon the mental condition of plaintiff in error. That it did have an effect upon his mental condition is evident from the record, as various of the witnesses testified that he was very angry and acted like a madman; and this, indeed, would be the natural effect of the receipt of such information upon a man who has a proper regard for the purity of his home. It does not necessarily follow, however, that the receipt of such information or the realization of such a fact, if it be a fact, results in insanity or a diseased condition of the mind. It was not attempted to be shown that plaintiff in error's mind had ever been diseased or that he had been in any respect peculiar or abnormal prior to the time when he suspected the infidelity of his wife. It is possible that in one whose mind had been diseased and who was a sufferer from some mental disorder the receipt of such information, whether based upon actual fact or not, would have a tendency to increase the mental disorder and further unbalance the mind and completely deprive the person affected of the use of his mental faculties. In such case it would no doubt be proper to show the receipt of such information and the effect it had upon the mind which was already diseased, or if, in fact, the receipt of such information of itself had produced a condition of insanity in the person who had theretofore been normal, it might be proper, after showing the insane condition, to show the cause which produced it. In this case it was not shown that plaintiff in error was

insane or was suffering from any mental disorder other than that he was extremely angry. As this testimony, of itself, under the state of the record, could not possibly tend to prove mental disorder or insanity it was properly excluded.

On his direct examination plaintiff in error was asked if he realized what he was doing on the occasion of the assault, to which he started to reply, "Well, I thought I did, in a way, but I didn't——" when the State's attorney said, "You have answered it now." Counsel for plaintiff in error insisted·that he be permitted to complete his answer, but the court ruled that the question had been answered. This was error. Plaintiff in error should have been permitted to answer the question fully. The error was harmless, however, as later in his examination, and on cross-examination, this matter was gone into fully and he was permitted to testify at length on the subject.

On direct examination one of the witnesses for plaintiff in error was asked to describe his conduct the last two times he saw him prior to March 19. This the witness did without objection, stating that plaintiff in error was very nervous and did not appear to know what he was doing. On cross-examination this witness was asked whether he seemed to know what he was talking about, to which he replied, over objection, that he did. It is insisted that it was error to permit this line of cross-examination. The cross-examination was proper. The witness, upon his examination in chief, was asked to describe the conduct of plaintiff in error, as tending to show that his mind was abnormal at that time. While the witness was not asked, on direct examination, to give an opinion as to the mental condition of plaintiff in error, this subject being opened it was proper, on cross-examination, for the State to ask the question objected to.

Complaint is made of the giving of fifteen instructions on behalf of the People, of the modification of one, and

the refusal to give three offered on behalf of plaintiff in error. A number of the instructions given on behalf of the People are objected to, on the ground that they are argumentative. There is no basis for this criticism. The instructions so criticised were in proper form and have been, in substance, repeatedly approved by this court.

The plaintiff in error complains that certain instructions given on behalf of the People on the subject of self-defense ignored the defense of insanity. None of the instructions complained of purported to sum up the elements necessary to warrant a verdict of guilty nor did any of them direct a verdict. The rules of law laid down in each were expressly limited to the defense of self-defense, and other instructions given to the jury announced the law applicable to the defense of insanity. Instructions must be taken as a series, and when the instructions given on the subject of self-defense are read in connection with the remaining instructions given to the jury, there is no possibility that the jury could, by the instructions on the subject of self-defense, have been led to believe that they might find plaintiff in error guilty even though they believed he was insane at the time he made the assault upon Roderick. Moreover, if the instructions offered by the People on the subject of self-defense are subject to the objection that they ignored the defense of insanity the instructions submitted by plaintiff in error on the subject of self-defense are subject to the same objection, and plaintiff in error is therefore in no position to complain of the alleged error in giving the People's instructions on that subject. *People* v. *Threewitt,* 251 Ill. 509.

One of the instructions given to the jury stated that it was immaterial what previous conversations, if any, had been had between the plaintiff in error and Roderick, provided they believed, from the evidence, beyond a reasonable doubt, that plaintiff in error shot Roderick as charged, and that he did not act in self-defense and had sufficient

mental ability to distinguish between right and wrong as to the particular act done. It was not error to give this instruction. Words, however provoking, constitute no justification for an assault with intent to commit murder. *Friederich* v. *People,* 147 Ill. 310.

For the reasons already given, the instruction on behalf of the People that it makes no difference what the conduct of Roderick had or had not been relative to the wife of plaintiff in error was properly given.

What has already been said in reference to the giving of instructions on the two defenses of insanity and self-defense justifies the action of the court in giving the modified instruction on behalf of plaintiff in error.

The refused instructions complained of were fully covered by others in the series. The jury were fully and fairly instructed upon the law, and we perceive no error in the giving or refusing of any instructions.

It is further complained that the court made prejudicial remarks to the plaintiff in error and to his attorneys in the presence of the jury. While on the stand plaintiff in error was not disposed to abide by the ruling of the court upon objections interposed and it became necessary to reprimand him. While the court finally reprimanded him severely and threatened to punish him for contempt we perceive no error in this, as plaintiff in error had been cautioned and yet persisted in volunteering remarks as to his defense and what he could prove if the court would permit him to do so. The remarks to counsel complained of were occasioned by counsel insisting upon the right to repeatedly ask questions to which objections had been sustained. There was no error in this regard. It was not necessary to repeat the questions in order to preserve the point, and counsel should have submitted to the ruling of the court.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*