THE COMMISSIONERS. OF HIGHWAYS OF THE TOWN OF
BEMENT, Appellees, *vs.* THE COMMISSIONERS OF LAKE
FORK SPECIAL DRAINAGE DISTRICT, Appellants.

*Opinion filed October 28, 1910.*

1. DRAINAGE—*drainage commissioners have power to enlarge a ditch crossing highway.* Under the Farm Drainage act drainage commissioners have the power to enlarge a ditch of the district where it crosses a public highway and may remove a bridge over the ditch in order to do the work, but they must restore the bridge and highway to proper condition for public travel, and may, if necessary, levy a special assessment to pay the cost of such restoration.

2. SAME—*drainage commissioners may be compelled to restore bridge.* Where drainage commissioners remove a highway bridge for the purpose of enlarging one of the ditches of the district which crosses the highway, they may be compelled by *mandamus,* at the suit of the highway commissioners, to rebuild the bridge, even though it must be made larger than the old bridge in order to span the enlarged ditch. (*Chicago, Burlington and Quincy Railroad Co.* v. *People,* 212 Ill. 103, distinguished.)

APPEAL from the Circuit Court of Piatt county; the Hon. W. G. COCHRAN, Judge, presiding.

This was a petition filed by the commissioners of highways of the town of Bement in the circuit court of Piatt county, against the commissioners of the Lake Fork Special Drainage District, to require said drainage commissioners to reconstruct a bridge which they had removed from over one of the main drains of said district where said drain crossed the public highway in said township, situated between sections 25 and 36, and to restore said bridge and the highway to their original condition, and, if necessary,. to levy a special assessment to meet the expenses of restoring said bridge and highway to the condition they were in prior to the removal of said bridge. An answer and replication were filed, and there was a trial before the court and a finding and judgment in favor of the petition-

ers that the respondents reconstruct said bridge and restore said highway to its original condition, and that a special assessment be levied, if necessary, to meet the expenses of restoring said bridge and highway to their original condition, and the drainage commissioners have prosecuted an appeal to this court.

It appears that in the early settlement of Piatt county the land situated north of the highway now located upon the section line between sections 25 and 36, in the town of Bement, was very low and swampy, and that the waters from section 25, in case of flood, flowed south onto section 36 through a swale or slight depression some ten or twenty rods in width, and finally reached, through said depression, the main channel of the Lake Fork; that in about the year 1856 a furrow was plowed through the lowest part of said swale or depression, and at the time the Lake Fork Special Drainage District was formed, in 1882, under the Farm Drainage act, there was a ditch some four feet wide and three feet deep crossing the public highway on said section line, some sixty rods east of the north-west corner of section 36; that said ditch was bridged by the commissioners of highways; that after the ditch was adopted as one of the drains of said drainage district by the drainage commissioners and enlarged to fourteen feet in width and six feet in depth, the commissioners of highways again bridged said drain with an iron bridge; that in 1909 the drain through sections 25 and 36 had filled up and the drainage commissioners proceeded to dredge out said drain to a width of twenty feet and to a depth of ten feet; that at the time said dredging was done the drainage commissioners removed said iron bridge, and after the drain was dredged out the drainage commissioners, though often requested, refused to rebuild said bridge or to restore the bridge and highway to the condition they were in before the bridge was removed by the drainage commissioners from over said drain, whereupon this petition was filed.

Reed & Reed, for appellants.

George M. Thompson, and A. C. Edie, for appellees.

Mr. Justice Hand delivered the opinion of the court:

There was a great deal of evidence taken on the trial on the question whether the drain which crosses the highway in the town of Bement, between sections 25 and 36, was a natural water-way or water-course, and portions of the briefs filed by the respective parties in this court have been devoted to a discussion of that question. From the view we take of this case we do not deem that question of vital importance, as we have reached the conclusion that under the provisions of the Farm Drainage act it was the duty of the drainage commissioners of said drainage district to restore said bridge and highway, after said drain had been repaired, to the condition in which they were prior to the removal of said bridge, so that they would be in a suitable condition for public use, and that said duty did not rest upon the commissioners of highways, and that if the said drainage commissioners refused to perform said duty they might be coerced so to do by *mandamus,* and, if necessary, might be coerced to levy a special assessment to pay the cost of rebuilding said bridge and restoring said highway.

Section 40 of the Farm Drainage act (Hurd's Stat. 1909, p. 894,) provides: "The commissioners shall have the right to use any part of the right of way of any public highway for the purposes of the work to be done, provided such use will not permanently destroy or materially impair such public highway for public use." And section 40½: "The commissioners shall have the power and are required to make all necessary bridges and culverts along or across any public highway * * * which may be deemed necessary for the use or protection of the work." And section 41: "After the completion of the work the commissioners

shall thereafter keep the same in repair." Section 40 also provides that the public highways may be assessed for benefits by the drainage commissioners. A method, therefore, · is found in the Farm Drainage act whereby the drainage commissioners of a district organized under that act can obtain a fund with which to pay for constructing bridges over the drains of the district when they cross public highways, and the commissioners are authorized to use the public highways for the purpose of the work to be done, provided they do not permanently destroy or materially injure the highways for public use, and it is made the duty of the drainage commissioners to erect all necessary bridges along or across any public highways which may be necessary for the protection of the work and to keep the drains of the district in repair. In the case at bar it was deemed necessary by the drainage commissioners to repair said drain upon sections 25 and 36 by dredging and otherwise, and in making such repairs it was necessary to take up and remove said bridge and temporarily to render said highway impassable at that point. When the repairs upon the drain across said highway were completed, the duty rested upon the drainage commissioners not to permanently destroy or materially impair the said public highway for public use by leaving it in a condition so that public travel would be permanently excluded from said highway. In other words, it was the duty of the drainage commissioners not to permanently destroy or materially impair such public highway for public use. The duty, therefore, when the repairs were completed, rested upon the drainage commissioners to restore said bridge and highway to a safe condition to accommodate the public travel. In making the repairs upon said drain, the drain, where it crossed the highway, was dredged until it was twenty feet wide and ten feet in depth, and unless it was bridged it is apparent the highway would be destroyed as a public highway· and rendered unfit for public use. We think, therefore, it is obvious that the duty

rested upon the drainage commissioners to reconstruct said bridge and repair the highway and thereby to render said highway fit for public use.

In *Morgan* v. *Schusselle,* 228 Ill. 106, we held so much of section 40½ of the Farm Drainage act unconstitutional as attempted to give to the drainage commissioners power to control any part of the road and bridge fund for the purpose of building bridges in public highways, and as the highways of the several townships, where they are bene-fited from improvements made by the drainage district, are required, under section 40 of the Farm Drainage act, to contribute a proportionate share of the cost of the im-provements which are made in drainage districts, there is nothing unfair in requiring the drainage commissioners to maintain the bridges which span the drains of the district.

This case is clearly distinguishable from the case of *Chi-cago, Burlington and Quincy Railway Co.* v. *People,* 212 Ill. 103, which is the case mainly relied upon by the appel-lants to sustain their position that the commissioners of highways, and not the drainage commissioners, should have rebuilt said bridge and restored said highway. In that case the right of way of the railway company crossed a natural water-course which had been adopted and enlarged by the drainage commissioners as the main drain of the district. The bridge of the railway company formed a barrier to the escape of the waters of the district across its right of way, and the railway company having refused to enlarge the channel of the water-way at the point where its railway crossed said natural water-course, it was held said railway company could be coerced to enlarge its bridge and widen the channel at that point by *mandamus.* The statute did not authorize the drainage commissioners to use the right of way of the railway company for the purpose of enlarg-ing said water-way across the railroad company's right of way or for the purpose of enlarging said bridge, and the only remedy of the drainage commissioners was to require

the railway company to widen said water-way and enlarge its bridge by *mandamus,* while here the drainage commissioners had ample authority, under the statute, to go upon the highway for the purpose of widening the drains of the district, subject to the condition that they would not permanently destroy or materially impair such public highway for public use, and under such power the appellants removed the bridge in question.   The question here, therefore, is not whether the commissioners of highways could have been originally, by a writ of *mandamus,* required to widen said drain and rebuild said bridge on the ground that said bridge spanned a natural water-way and the outlet across said highway and through said bridge was insufficient to carry the waters of said district, as was the case in *Chicago, Burlington and Quincy Railway Co.* v. *People, supra,* but the question here to be decided is, the drainage commissioners having gone upon a public highway which was properly bridged and removed the bridge and enlarged and repaired the drains of the district, could such drainage commissioners be required, by *mandamus,* to reconstruct said bridge and repair said highway?  The drainage commissioners having undertaken to make a change in the highway at the point where the drains of the district cross the highway, by widening and deepening the drains of the district, it was the duty of the drainage commissioners, when the repairs were completed, to restore the bridge and highway to a condition which would make the highway fit for public use as a highway, and the fact that in restoring the bridge it would be necessary to lengthen the bridge so it would span the increased width of the drain would not relieve the drainage commissioners from the duty of rebuilding said bridge.

Finding no reversible error in this record the judgment of the circuit court will be affirmed. *Judgment affirmed.*